**POMEROY COOPERATIVE GRAIN COMPANY, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 16517.**

United States Court of Appeals Eighth Circuit.

March 20, 1961.

1. Compensation received by taxpayer from the Commodity Credit Corporation (C. C. C.), a government agency for handling and storing grain which producers of such grain, including both members and nonmembers of the cooperative had surrendered to the C. C. C. in satisfaction of Government crop loans.

2. Compensation received from nonmembers other than the C. C. C. including producers and nonproducers for grain storage.

3. Compensation received from members for grain storage.

Taxpayer in its petition for review urges that the Tax Court committed error in disallowing the exclusions it claimed based upon such transactions.

It is undisputed that taxpayer is a nonexempt farmers' cooperative corporation organized pursuant to Iowa law. Taxpayer kept its books and filed its tax returns upon an accrual basis. The business activity of taxpayer was carried on through two departments, the grain department and the merchandise department. Business was transacted with members and nonmembers; the grain department purchased and sold grain including corn, oats, and soybeans, and also performed services such as handling, conditioning and storing grain. The principal facility employed in performing such functions was an elevator structure located adjacent to a rail siding which was equipped for receiving, weighing, testing, conditioning, storing, and loading and unloading grain. Through the merchandise department, petitioner sold fencing, hardware and other supplies. There is no dispute as to the excludability of patronage dividends allocated on the business of the merchandising department. Likewise, there is no controversy as to the allocation of profits from grain purchased from members. The dispute is confined to excludability of profits arising from the storage of grain.

The Commissioner concedes that the taxpayer was obligated under Iowa law and its Articles to make a patronage dividend representing its net margin of

James M. Stewart, and Rolland E. Grefe, Des Moines, Iowa, for appellant.

Karl Schmeidler, Atty., Dept. of Justice, Washington, D. C., for appellee. Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and Melva M. Graney, Attys., Dept. of Justice, Washington, D. C., were with him on the brief.

Before WOODROUGH, VAN OOSTERHOUT and MATTHES, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Taxpayer, a nonexempt farmers' cooperative corporation, incorporated under Chapter 499, Iowa Code Ann., has filed a timely petition to review the decision of the Tax Court (opinion 31 T.C. 674) determining deficiencies in income tax for the fiscal years ending June 30, 1953, 1954 and 1955.

The deficiencies resulted from a determination that patronage dividends for the taxable years to the extent they were allocated out of savings and income from certain grain storage business were not excludable from taxpayer's gross income. Storage profits included in the patronage dividends allocated to members were denied excludability from the cooperative's gross income to the extent that they arose out of the following types of transactions:

**328**

profit to its members at some time. Patronage dividends were allocated to members only. Section 499.30, I.C.A. provides for the distribution of the cooperatives' earnings. Certain deductions for capital stock dividends and reserves are authorized with direction to allocate the balance to a revolving fund credited on the books to the account of each member "ratably in proportion to the business he has done with the association during such year." It would appear that the allocation of patronage dividends was made pursuant to this statute and that the dividends were in the form of books credits not available to the patron during the taxable year in the form of cash or its equivalent. As stated by the Commissioner, the record does not show exactly how the declaration of dividends was handled. Likely this was because the parties had stipulated "patronage refunds for the taxable years were allocated to member patrons pursuant to a pre-existing obligation of the petitioners."

■ Before discussing the issues raised by the taxpayer, we pause to consider the broad contention made by the Government that no part of the patronage dividends regardless of source is excludable to the taxpayer. This broad issue, which was not raised in the Tax Court and which is presented for the first time upon this appeal, is thus stated by the Commissioner:

"The taxpayer, a nonexempt cooperative, is taxable on the patronage dividends, since it failed to take sufficient action to make the income represented by the patronage dividends that of its patrons; only when and if such action is taken in years subsequent to the taxable years will the patronage dividends be excludable from the taxpayer's income."

The Commissioner agrees that the rationale of this contention applies to all patronage dividends allocated by the taxpayer including the portion of said dividends not attacked in the Tax Court, but addresses this argument "solely to those amounts placed in issue by the taxpayer and to sustain the Tax Court's decision disallowing the allocations made to members out of proceeds derived from non-members." We have carefully considered a like contention in Farmers Cooperative Co. v. Commissioner, 8 Cir., 288 F.2d 315, and reject the Commissioner's broad contention for all of the reasons set out in our opinion in that case.

We shall now consider the errors urged by the taxpayer. The Tax Court in its opinion recognizes the right of a nonexempt cooperative to exclude from its income true patronage dividends, including deferred dividends having no immediate cash market value. The Tax Court at page 686 of 31 T.C., states that three prerequisites must be met to make the patronage dividends excludable from gross income of the cooperative, namely:

"1. The allocation must have been made pursuant to a legal obligation which existed at the time the patron transacted his business with the cooperative.

"2. The allocation must have been made out of profits or income realized from transactions with the particular patrons for whose benefit the allocations were made, and not out of profits or income realized from transactions with other persons or organizations which were not entitled to participate in such allocations."

"3. The allocations must have been made equitably; so that profits realized on the one hand from selling merchandise or services to patrons, and those realized on the other hand from marketing products purchased from patrons, were allocated ratably to the particular patrons whose patronage created each particular type of profit."

The validity of the first two of the prerequisites set out by the Tax Court in the quotation immediately preceding appears to be well established by the authorities cited by the Tax Court and such requirements appear to be entirely reasonable. The taxpayer makes no attack upon such

requirements but takes the position that it has met the first two prerequisites.

It is not entirely clear just what standards the Tax Court intended to impose by its third requirement. We agree with the Tax Court to the extent that it holds that the patronage dividends on member business should be allocated equitably to members upon the basis of business transacted by the members. The validity of the third prerequisite to the extent that it goes beyond requiring an equitable distribution of profits arising from member business to participating members is considered hereinafter in connection with our discussion of the member-storage issue.

It is conceded that as to all items in controversy, the first test relating to pre-existing obligation has been met. The issue raised in Farmers Cooperative Co. v. Commissioner, supra, that no proper allocation was made because timely notice of the individual dollar credits to the patron was not given, is not raised in this case and such defense would not be available to the Commissioner because of the stipulation that the dividends were allocated to the members.

The Tax Court as a basis for disallowing the exclusion of profits allocated out of C. C. C.'s storage and handling fees, states:

"[I]t is obvious that the allocations made by petitioner for its members only, out of such compensation, did not and could not represent *corrective and deferred price adjustments* to members, in respect of any grain purchased by petitioner from such members, or in respect of any storage charges paid by them. Accordingly, as regards the allocations made out of Government grain income, petitioner failed to meet the second of the prerequisites above mentioned; and the amounts so allocated do not qualify as true patronage dividends."

The taxpayer urges that the court erred in such determination, urging that the C. C. C. storage income arose out of business it transacted with its members. Such contention requires some examination of the pertinent facts. C. C. C. has pursuant to federal legislation made commodity loans available to farmer producers. Such loans, secured by chattel mortgages on grain, were made in an amount per bushel fixed by the Secretary of Agriculture pursuant to law, such price often being in excess of the prevailing market price for the grain. Initially the mortgaged grain is ordinarily stored on the producer's farm. Under the loan agreement, the producer has the option of delivering the number of bushels of grain covered by his loan to the C. C. C. in full satisfaction of the loan, or of paying the loan plus interest and retaining the grain. The storage of the C. C. C. grain here arose out of situations where the producers elected to deliver the grain to the C. C. C. in satisfaction of their loans or had defaulted on their loans.

C. C. C. had a uniform grain storage agreement with taxpayer under which taxpayer agreed to perform certain handling and storage services at agreed rates. The grain which served as security for the loans and which had been stored on the producers' farms was delivered to the taxpayer by the producers pursuant to written instructions to the producers by the county C. C. C. committee. The taxpayer at the time of delivery weighed and inspected the grain and thereafter handled the grain as the property of C. C. C. and stored it, issuing warehouse certificates to C. C. C., or shipped it as directed by C. C. C. and collected all storage and handling charges from C. C. C.

Even if we assume, as contended by the taxpayer, that grain delivered by member-producers in satisfaction of C. C. C. loans could have been redeemed by paying off the loan up to the time it was accepted on behalf of C. C. C., there is no evidence that the producers made any attempt to make such redemption. It is clear that title to the mortgaged grain passed the C. C. C. before any storage or handling fees here involved were earned.

Taxpayer urges that storage and handling here is processing which adds to the value of the commodity and is similar to processing of milk by milk cooperatives. In the case of grain purchased by the taxpayer from a member, some degree of processing, storage and handling is required which may enhance the value of the grain. In such a situation, doubtless the enhanced value of the product is properly includable in the profits distributed to members. The difficulty with such contention here is that the taxpayer never did acquire title to the grain, nor did it ever sell the processed product. Title was in the C. C. C. and any services rendered were for the C. C. C.

■ Taxpayer places considerable reliance upon an unpublished letter written by a deputy commissioner, addressed to an unrelated cooperative of Hutchison, Kansas. The Commissioner is not bound by such an unpublished letter written by one of his subordinates. See Automobile Club of Mich. v. Commissioner, 353 U.S. 180, 183, 77 S.Ct. 707, 1 L.Ed.2d 746; Helvering v. New York Trust Co., 292 U.S. 455, 468, 54 S.Ct. 806, 78 L.Ed. 1361; Guenzel's Estate v. Commissioner, 8 Cir., 258 F.2d 248, 253.

Moreover, the letter relied upon does not adequately set out the facts upon which the purported ruling is based. It would appear that the letter dealt at least in part with the situation where the grain, during the loan period and before default, was stored by the producer in the elevator at his expense. The situation where the producer stores the grain to which he holds title at the elevator during the loan period prior to default, is not here presented.

Like the Tax Court, we find nothing in Greene County Farmers Sales Ass'n v. United States, 55 F.Supp. 123, 102 Ct.Cl. 105, which is controlling on the issue here presented.

As pointed out in Farmers Cooperative Co. v. Commissioner, supra, there is no specific statutory authorization for the exclusion of patronage dividends of non-exempt cooperatives. Exclusion of patronage dividends by exempt cooperatives is governed by § 101(12) of the Code of 1939 as amended in 1951 and § 522, I.R.C. 1954, 26 U.S.C.A. § 101(12) and § 522. The report of the Senate Finance Committee on the 1951 amendment to § 101 (12), I.R.C.1939, states in part:

"[N]onoperating income such as interest, dividends, rents, and capital gains and also the income from certain business done with the United States Government or its agencies, is taxable to the ordinary cooperative even when allocated to the accounts of patrons, but are tax-free to the exempt cooperative whether or not allocated." Senate Report 781, 82d Congress, 1st Sess., pp. 20, 21, U.S.Code Cong. and Adm.Service 1951, p. 1989.

Treasury Regulations 118 §: 39.101 (12)-3(d) and Treasury Regulations (1954) Code § 1.522–2(d), relating to exempt corporations, each provides in part: "Business done with the United States shall constitute income not derived from patronage."

The foregoing amendment and regulations do not directly apply to nonexempt cooperatives. We do not regard the regulations conclusive upon the issue before us but they lend some support to the Commissioner's contention that storage profits arising from business with a Government agency cannot be considered income derived from patronage.

Revenue Ruling 59–107, C.B. 1959–1, p. 20, provides in part:

"A cooperative may allocate to its patrons on the basis of business done with such patrons margin which otherwise would be its own income and its income may be reduced to the extent of the allocation on the theory that the amounts allocated were not income to the cooperative. The fact that the exclusion is allowable if it is made pursuant to a pre-existing obligation is emphasized in Revenue Ruling 54–10, C.B. 1954–1, 24, 25.

"Accordingly, it is held that when, as part of the price support pro-

gram, money is loaned to a farmer-producer on his warehouse receipt for grain stored in a nonexempt co-operative, storage charges paid by the Commodity Credit Corporation for the period prior to default are income allocable to members as patronage dividends and are excludable from the cooperative's income if there was a pre-existing obligation to allocate such patronage income.

"The storage charges paid by the Commodity Credit Corporation for the period following default constitutes income not derived from patronage, as the grain at that time belongs to the Commodity Credit Corporation. A nonexempt cooperative for taxable years beginning after December 31, 1951, is taxable on such income whether or not it is allocated to patrons."

It is true as asserted by taxpayer that this ruling was published after the taxable years here involved and after the decision of the Tax Court in this case. For reasons heretofore stated, we believe the ruling properly states the law to be applied to the present situation.

■ Taxpayer did not dispute the determination that the C. C. C. grain storage here involved pertains to grain surrendered by producers in satisfaction of their commodity loans. Title to the C. C. C. grain here involved passed to the C. C. C. before any storage or handling fees were earned. Such services were performed for and at the direction of the C. C. C. and paid for by the C. C. C. No storage contract or agreement as to the C. C. C. grain ever came into existence between the taxpayer and its producer-patron. The Tax Court was warranted on the record before us in determining that storage and handling charges collected by the taxpayer from the C. C. C. for services rendered after the C. C. C. had obtained title to the grain were not profit or income realized from transactions with member-patrons of the taxpayer.

Under the circumstances here disclosed, there is no basis for distinction between grain grown by members and that produced by nonmembers.

■ It is well established that profits derived by nonexempt cooperatives from nonmember business are not entitled to be excluded from the cooperatives' gross income. The patronage dividends to the extent that they were allocated to members out of profits realized from the C. C. C. grain storage were properly denied as exclusions from the cooperative's gross income.

Upon the issue of profits arising from storage charges earned on grain belonging to nonmembers, including both producers and nonproducers, the Tax Court is entitled to be affirmed. We agree that the allocations from such earnings do not qualify as true patronage dividends for the same reasons that the C. C. C. storage profits fail to so qualify. The second requirement above stated that the profits be realized out of transactions with patrons for whose benefit the allocations were made has not been met.

■ The remaining issue is whether the profit from the storage fees received for storage of grain belonging to members to the extent that it is included in the patronage dividends allocated is excludable from gross income by the taxpayer. Clearly this type of business meets the first two of the three prerequisites laid down by the Tax Court. The Tax Court held that under the principles it had stated, "allocations out of such compensation if made equitably to the particular members from whom the compensation was received would qualify as true patronage dividends." The court denied exclusion as to this income because it thought their third prerequisite had not been met, that is, the allocations had not been made equitably or ratably to the particular patrons whose patronage created the particular type of profit.

Storage profits were allocated to members upon the same basis as profits from grain purchased from members. The allocation was upon the basis of the num-

ber of bushels of grain delivered to the elevator by members either for purchase by taxpayer or for delivery to the C. C. C.[1]

The Tax Court as a basis for its determination that the distribution of profits from member-storage business did not meet its third requirement, observed that not all members who sold taxpayer their grain stored their grain; that those who stored various grains did so for different periods; that a large part of the storage revenue was derived from storage of beans, while the largest part of the grain delivery consisted of corn, and that profits might vary in the storage of various types of grain. The Tax Court cited no statutes, regulations or cases to support its ruling upon this issue. It appears to us that traditionally the farmers' co-operative business has been divided into two categories, the grain department and the merchandise department. The savings of the merchandise department are generally allocated to members upon a dollar basis and those of the grain department upon a bushel basis. See Farmers Cooperative Co. v. Birmingham, D.C.N.D.Iowa, 86 F.Supp. 201; Clover Farm Stores Corp., 17 T.C. 1265; Rev. Rul. 59–107, supra, I.T. 3208 C.B. 1938–1, p. 127.

In Birmingham, at page 215, of 86 F.Supp., the court quotes extensively from Adcock, Patronage Dividends; Income Distribution or Price Adjustment, 13 Law and Contemporary Problems 505, 520, including the following:

"A general analysis of the business operations of cooperatives reveals the impracticability if not the impossibility of relating patronage dividends to gain or loss upon any particular transaction with any particular patron."

It is also there pointed out that on some grain purchases the price will rise and a large profit result while in other situations a loss may be suffered because of a price decline. There appears to be no requirement that a patronage dividend a member receives be based on the profit made on his particular transaction. It appears to be sufficient if the profits arising from member business are equitably distributed among the members who have transacted business with the cooperative.

Revenue Ruling 59–107 heretofore quoted recognizes the right to have storage charges accruing before default on grain mortgaged to the C. C. C. allocated as patronage dividends to members. Nothing appears in that ruling or any other ruling or regulation coming to our knowledge requiring that storage profits be allocated only to patrons storing grain or that the period of storage of each patron must be taken into consideration.

The taxpayer's grain business is an integrated business. The same storage and handling facilities are used by the taxpayer in its grain purchasing and in storage activities. Much of the grain purchased is stored for a time awaiting a more favorable market. The record in our present case shows that in practically all instances of member storage, the stored grain was ultimately sold to the taxpayer. Thus, it would appear that earnings from taxpayer's storage facilities arose both out of storage fees collected and out of price increases of grain that it purchased and stored.

1. The issue of whether a patron member can properly be credited on the patronage ledger for grain delivered to the C. C. C. in satisfaction of a loan lurks in the record. The Commissioner made no complaint about the allocation of grain profits to members made upon the same basis. This issue may well be one of considerable importance to cooperatives and their patrons. The issue is not squarely raised or argued and the Tax Court had made no determination of it. In this situation, we do not believe that such issue is ripe for adjudication in this case.

There is some doubt whether the Commissioner has sufficient standing to object to the taxpayer's method of allocating what would normally be income excludable to the taxpayer among its member-patrons in a manner apparently acceptable to such members as an equitable distribution of profits.

The taxpayer urges that the distribution of storage profits to members upon the basis of their individual business would be impractical and would involve an expensive and complicated system of cost accounting. It appears that there are no statutes or regulations prescribing standards for determining the profits to be allocated to the various phases of the grain department. Taxpayer asserts that under such circumstances each revenue agent might consider that he had an open invitation to set up a new classification of income and a new method of allocation, thus causing hopeless confusion and uncertainty as to the proper method of procedure. There is some merit in the taxpayer's observations and in the absence of any statute or regulation setting up reasonable standards for the allocation of profits arising from member business with the grain department, we believe that the taxpayer is entitled to treat its grain department as a unit for the purpose of determining and allocating to members their equitable share of the profits in the business they provided.

From a revenue standpoint, the Commissioner should be more concerned with the total exclusions allowable on membership business profits rather than the means by which such profits are divided among the qualified members. As stated in the Birmingham case at page 213 of 86 F.Supp., "the crucial question involved in determining the taxability of patronage dividends is whether they constitute income to the cooperative, or to the patron, or to both."

The Tax Court committed error in disallowing taxpayer an exclusion for profits derived from grain stored by its members and allocated to its members. The case is remanded to the Tax Court for determination of the amount of the exclusion allowable for profits arising from member grain storage business, which have been allocated in the form of patronage dividends.

The decision of the Tax Court is affirmed as to issues arising out of grain stored by C. C. C. and nonmembers of taxpayer cooperative, and is reversed and remanded as to the storage profits on storage by members included in the patronage dividend allocations made.