FARMERS COOPERATIVE GRAIN COMPANY, A CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 68513.   Filed December 18, 1962.

*Robert C. Guenzel, Esq.,* and *James M. Stewart, Esq.,* for the petitioner.

*Ivan L. Onnen, Esq.,* for the respondent.

MULRONEY, *Judge:* The respondent determined deficiencies in the income tax of petitioner for the taxable years ended June 30, 1954, and June 30, 1955, in the respective amounts of $5,400.68 and $7,455.76.

The principal issue is whether income received for storage and handling of grain delivered to petitioner's elevator in satisfaction of Commodity Credit loans is to be considered nonpatron income and therefore not excludable from petitioner's gross income as patronage dividends.

### FINDINGS OF FACT.

Some of the facts are stipulated and they are found accordingly.

The petitioner is a nonexempt farmers' cooperative association, organized and operated during the taxable years involved under chapter 499 of the Code of Iowa (1958). Its principal place of business is located in Randall, Iowa.

The petitioner keeps its books and files its income tax returns on an accrual basis for a fiscal year ending on June 30. Its returns for the

taxable years ended June 30, 1954, and June 30, 1955, were filed with the district director of internal revenue for the district of Iowa.

Petitioner is a purchasing and marketing cooperative, dealing in grain and farm supplies. These business activities are carried on in three departments, described in the computations of patronage dividends attached to the petitioner's income tax returns for the respective years as grain, petroleum, and merchandise, respectively. During the taxable years involved each of petitioner's three departments transacted business with nonmembers, as well as with members of the petitioner.

Patronage dividends for the taxable years involved were allocated to petitioner's members pursuant to a preexisting obligation.

During the taxable years involved, the petitioner received from producers storage fees for the storing of grain of said producers, members and nonmembers, as follows:

| Taxable year | Amount |
|---|---|
| June 30, 1954 | $2,579.75 |
| June 30, 1955 | 2,305.54 |

These amounts were included by the petitioner in the gross savings and income of its grain department in computing its exclusions from gross income for allocated patronage dividends.

During the taxable years involved, the petitioner received from the Commodity Credit Corporation (hereinafter referred to as CCC) storage fees for the storing of grain of producers, members and nonmembers, for the periods of time prior to default by said producers in satisfaction of loan agreements executed by them and prior to the date of the takeover of said grain by the Commodity Credit Corporation in satisfaction of such loan agreements with the said producers, in the following amounts:

| Taxable year | Amount |
|---|---|
| June 30, 1954 | $122.11 |
| June 30, 1955 | 1,883.74 |

During the taxable years involved, the petitioner also received from the CCC additional handling fees. The amounts of these handling fees and the nature of the services performed by the petitioner are set forth below:

| Nature of services performed | Amounts received | |
|---|---|---|
| | June 30, 1954 | June 30, 1955 |
| Receiving into petitioner's elevator, weighing, grading, and loading into boxcars grain delivered to petitioner's elevator | None | $1,362.87 |
| Receiving into petitioner's elevator. weighing, grading, and storing same for first 10 days, grain delivered to petitioner's elevator | $7,626.20 | 1,429.98 |
| Receiving, weighing, grading, and loading into Government-owned bins grain delivered to petitioner's elevator | 1,971.97 | 6,374.23 |

In petitioner's income tax returns for the fiscal years ended June 30, 1954, and June 30, 1955, petitioner claimed exclusions from gross income for allowable patronage refunds in the amounts of $33,076.28 and $36,806.80, which had been computed by inclusion of compensation received for the handling and storing of CCC grain as member business. Respondent's determinations of deficiencies eliminated such compensation in the computation of excludable patronage dividend income and held such compensation from the CCC was taxable as "other income." Petitioner now concedes some of such compensation was not excludable as patronage dividends.

Petitioner used the bushel as the unit of measure to compute the percentage of its grain department business that was attributable to member patronage and the percentage thereof that was attributable to nonmember patronage. Petitioner included in the computation the grain delivered in satisfaction of CCC loan and purchase agreements (as well as grain acquired by purchase), resulting in 85.77 percent and 86.22 percent as the percentages of its grain department business attributable to member patronage in the fiscal years 1954 and 1955, respectively.

Respondent, in computing the percentage of grain department income allowable to members' patronage dividends, eliminated from the bushel totals the grain delivered in satisfaction of CCC loan and purchase agreements. With the CCC grain eliminated, the percentage of grain department income attributable to members' patronage dividends was computed as 85.59 percent for the fiscal year 1954 and 81.09 percent for the fiscal year 1955.

OPINION.

It is well established that a nonexempt cooperative, such as petitioner, may exclude from gross income the earnings that qualify as patronage dividends. It is equally well settled that one of the prerequisites of a true patronage dividend is that the profit must have been derived from transactions with the members, to whom the allocation of patronage dividends is made, and not from nonmember business.

The principal question to be determined here is whether certain storage and handling fees received by the petitioner from the Commodity Credit Corporation (a nonmember) for certain specified services, are excludable from petitioner's gross income as patronage dividends.

In *Pomeroy Cooperative Grain Co.*, 31 T.C. 674 (partially affirmed *Pomeroy Cooperative Grain Co.* v. *Commissioner*, 288 F. 2d 326),

we held with regard to a nonexempt cooperative, such as petitioner, "that the amounts allocated by petitioner to its members only, out of the compensation which it received from the C.C.C. for handling and storing Government grain, are not excludible from petitioner's gross income, as part of its patronage dividends." This holding was specifically affirmed by the Court of Appeals (Eighth Circuit) where, in the course of its opinion, that court stated (288 F. 2d at 331):

The Tax Court was warranted on the record before us in determining that storage and handling charges collected by the taxpayer from the C.C.C. for services rendered after the C.C.C. had obtained title to the grain were not profit or income realized from transactions with member-patrons of the taxpayer.

After our opinion in *Pomeroy Cooperative Grain Co., supra,* the Commissioner published Rev. Rul. 59–107, 1959–1 C.B. 20,[1] and this ruling was specifically approved in the opinion of the Court of Appeals upon the appeal of that case (288 F. 2d at 330, 331).

Petitioner's position here is that a breakdown of the storage and handling charges paid by the CCC shows that some of the income it derives from such charges is properly allocable as patronage refunds and therefore properly excludable from its income.

Petitioner states on brief:

Commodity Credit grain income breaks down into five categories:

(1) Income attributable to storage of grain subsequently taken over by Commodity Credit, such storage being earned prior to take-over date,

(2) Income attributable to the handling (weighing, measuring, grading, and in-loading) of grain subsequently turned over to Commodity Credit earned prior to take-over date,

(3) Income attributable to the handling of grain delivered to the elevator in satisfaction of a Commodity Credit loan or a Commodity Credit purchase agreement,

(4) Income attributable to storage of Commodity Credit grain earned after take-over date,

(5) Income attributable to the activity of loading out Commodity Credit grain after take-over date.

---

[1] "A cooperative may allocate to its patrons on the basis of business done with such patrons margin which otherwise would be its own income and its income may be reduced to the extent of the allocation on the theory that the amounts allocated were not income to the cooperative. The fact that the exclusion is allowable if it is made pursuant to a pre-existing obligation is emphasized in Revenue Ruling 54–10, C.B. 1954–1, 24, 25.

"Accordingly, it is held that when, as part of the price support program, money is loaned to a farmer-producer on his warehouse receipt for grain stored in a nonexempt cooperative, storage charges paid by the Commodity Credit Corporation for the period prior to default are income allocable to members as patronage dividends and are excludable from the cooperative's income if there was a pre-existing obligation to allocate such patronage income.

"The storage charges paid by the Commodity Credit Corporation for the period following default constitutes income not derived from patronage, as the grain at that time belongs to the Commodity Credit Corporation. A nonexempt cooperative for taxable years beginning after December 31, 1951, is taxable on such income whether or not it is allocated to patrons."

That all storage and handling fees described in the above five categories were received from CCC is not in dispute. Petitioner concedes categories 4 and 5 represent income from nonmember transactions, includable in its taxable income. With respect to category 1, it was stipulated that in fiscal 1954 and 1955 petitioner received from CCC the sums of $122.11 and $1,883.74, respectively, from members and nonmembers as charges for storing of grain for the periods of time prior to the default by producers on their loan agreements and prior to the date of the takeover of the grain by the CCC in satisfaction of the loan agreements with producers. Respondent concedes 85.59 percent and 81.09 percent of the respective amounts of $122.11 and $1,883.74, less expenses applicable thereto, may be excluded from petitioner's gross income for the fiscal years 1954 and 1955. Petitioner offered no testimony that it was entitled to exclude any amounts in this category in excess of the amounts respondent conceded.

There is no evidence in the record with respect to any income received by petitioner described in category 2, so we need not discuss it.

The real controversy is with respect to category 3 or the income attributable to the *handling* of grain that is delivered to petitioner's elevator in satisfaction of a CCC loan or purchase agreement. The three types of transactions here involved are, (1) where the grain is delivered to the elevator for weighing, grading, and storage, (2) where the grain is delivered to the elevator for weighing, grading, and immediate shipment, and (3) where the grain is delivered to the elevator for weighing and grading and elevated to storage in Government-owned bins.

In support of its position that the handling charges for such described services for grain delivered in satisfaction of CCC loans are deductible, petitioner argues the economic burden of these charges falls upon the grain producer. It is stipulated these charges were paid by CCC. There is nothing in the record to indicate such handling charges were deducted or even considered in computing the loan value of the commodity. The services were performed after the producer had notified the CCC of his intention to deliver the grain in satisfaction of the loan and had received delivery instructions from the CCC to deliver the grain to the elevator and the charges for the services were paid by the CCC pursuant to its contract with petitioner. There is nothing in the record that indicates the economic burden of these charges falls on the producer.

Some argument is made that the producer has the right to select the elevator to which the grain, to be delivered in satisfaction of his CCC loan, is to be delivered. This seems of no significance but in any event

the record would indicate he would have no more than a right to express his preference.

The balance of petitioner's argument with respect to these handling charges being deductible from gross income is based upon suppositions of what might happen if certain events occurred. Petitioner argues the CCC could refuse to treat the commodity as belonging to it if the grain does not satisfy as to quality or quantity and the producer would have the right to withdraw his grain if he rejected the weights and grades determined by producer. No document in the record seems to support such action. Provision is made for settlement of grade dispute by delivery of a sample to the nearest District Inspection Office of the United States Department of Agriculture. At any rate, there is no evidence in the record of any dissatisfaction and no instance of the CCC refusing delivered commodity.

There is nothing in this case to distinguish the handling charges in question from those considered in *Pomeroy Cooperative Grain Co.*, *supra*. They were fees for services earned after title to the grain had passed to the CCC and the income therefrom cannot be excluded from taxpayer's gross income as patronage dividends.

A second issue is presented which involves the manner of computing the portion of petitioner's grain department business, attributable to transactions with its members. Petitioner used the bushel as the unit of measure to compute the percentage of its grain department business that was attributable to member patronage and the percentage thereof that was attributable to nonmember patronage. Petitioner argues the total bushels of grain delivered to it by farmer-producers in satisfaction of CCC loans should be included with total bushels of grain purchased by it in computing the portion of its grain department business attributable to transactions with its members. Respondent eliminated all grain delivered in satisfaction of CCC loans from the total bushel-volume of grain department business and from the total bushel-volume of member business. Respondent's computation is right.

We have held above that income received by petitioner from the CCC, a nonmember, for handling and storing CCC grain may not be excluded from income as patronage dividends. It follows from this holding that no consideration should be given to the number of bushels of such grain in computing the portion of its grain department income which may be excluded from its gross income as patronage dividends. Petitioner's computation, by including all of the grain handled by the grain department, results in a distortion of the percentage of grain department income properly attributable to its members for purposes of patronage dividends.

*Decision will be entered under Rule 50.*