LINNTON PLYWOOD ASSOCIATION, an Oregon Cooperative Corporation, Plaintiff,

v.

UNITED STATES of America, Defendant.

MULTNOMAH PLYWOOD CORPORATION, an Oregon Corporation, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. Nos. 73–982, 73–1017.

United States District Court, D. Oregon.

March 30, 1976.

Tooze, Kerr, Peterson, Marshall & Shenker, Robert M. Kerr, Charles R. Holloway, III, Portland, Or., for plaintiff Linnton Plywood Association.

Lindsay, Nahstoll, Hart & Krause, Jonathan A. Ater, Wesley W. Kirtley, Portland, Or., for plaintiff Multnomah Plywood Corp.

Sidney I. Lezak, U. S. Atty., Portland, Or., James N. Flaherty, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant.

SOLOMON, District Judge:

The plaintiffs are two workers' cooperatives which manufacture and market plywood and plywood byproducts. They seek refunds for the federal corporate income taxes they paid.

## I. *The Statute*

Subchapter T of the Internal Revenue Code of 1954, 26 U.S.C. §§ 1381–1388, provides special tax treatment for cooperatives. During the tax years involved here (the tax years), both plaintiffs qualified for Subchapter T treatment. 26 U.S.C. § 1381(a)(2); *Linnton Plywood Association v. United States,* 236 F.Supp. 227 (D.Or.1964); *Puget Sound Plywood, Inc. v. Commissioner,* 44 T.C. 305 (1965).

A qualified cooperative can exclude from its taxable income amounts paid as patronage dividends. 26 U.S.C. § 1382(b). A patronage dividend is "an amount paid to a patron by [a qualified cooperative]—

(1) on the basis of quantity or value of business done with or for such patron,

(2) under an obligation of such organization to pay such amount, which obligation existed before the organization received the amount so paid, and

(3) which is determined by reference to the net earnings of the organization from business done with or for its patrons.

Such term does not include any amount paid to a patron to the extent that (A) such amount is out of earnings other than from business done with or for patrons. . . ." 26 U.S.C. § 1388(a).

Amounts paid as patronage dividends are excluded from the cooperative's taxable income and are included in the gross income of the recipient. 26 U.S.C. § 1385(a).

The principal issue here is whether the Commissioner of Internal Revenue properly disallowed part of each plaintiff's patronage dividend exclusion from taxable corporate income. The Commissioner ruled that each plaintiff improperly inflated its patronage dividend exclusion by overstating the amount of "business done" with its patrons.

## II. Facts and Contentions

### A. Linnton Plywood Association, Civil No. 73–982

Linnton was organized in 1951 under Oregon law as a non-profit workers' cooperative association.[1] It operates a plywood manufacturing plant in Portland, Oregon, and markets the products.

Linnton seeks a tax refund for the fiscal years ending March 31, 1968, 1969, 1970, and 1971.

Two hundred shares of common stock, with a par value of $5,000 each, were issued and outstanding during the tax years; 190 shares were held by members of the cooperative (members), and 10 shares were held as treasury stock. Ownership of common stock is a condition of membership in the cooperative and is limited to one share a member. Each member has one vote. Dividends on common stock, as distinguished from patronage dividends, are authorized but have never been declared. Membership and its privileges are not assignable.

Each member is entitled to work for Linnton. During the tax years, almost every one of the 190 members worked for Linnton. In addition, there were about 20 non-member employees.

The members own, operate and manage the mill. Quarterly meetings are held. The board of directors (board) meets at least once a month. The board minutes are published and distributed for review by the members. Daily production records are posted. Monthly and annual financial statements are sent to each member.

The board consists of members who are elected by a majority vote of the membership. All committees are staffed by members. Almost every job is open to members upon a bid and seniority basis, except certain jobs which also require approval by the board.

During the tax years, all of Linnton's net earnings, except for a small amount of rental income, were generated by producing and marketing its plywood and plywood byproducts.

Each year, Linnton distributes part of its net earnings to its members as patronage dividends, and then excludes that amount from its taxable corporate income. Linnton calculates the total patronage dividend by determining what portion of its non-rental net earnings is attributable to the work of its members (patronage). Net earnings attributable to the work of Linnton's non-member employees or derived from rent are not patronage earnings and are included in Linnton's taxable corporate income.

To determine the portion of net earnings which is attributable to the work of members (and therefore subject to patronage dividend treatment under Subchapter T), Linnton compares the time worked by members with the time worked by non-member employees.[2] Linnton multiplies by 150% the hours worked by members to reflect the higher value of the members' work as compared to the work of non-member employees.[3]

Each member's share of the total patronage dividend is determined by the proportion that his "patronage credits" (hours worked) bear to the total "patronage credits" of all members. The amount of a member's patronage dividend is not affected by the type of work he performs. Each member has an opportunity to work the same amount of

---

1. Chapter 5, Title 77, Oregon Compiled Laws Annotated; codified in 1953 as Chapter 62, Oregon Revised Statutes; replaced in 1958 by the Oregon Cooperative Corporation Act, Chapter 62, Oregon Revised Statutes.

2. Hours spent by members to attend meetings and otherwise participate in management are credited as hours worked. Overtime hours are credited as time-and-a-half for both members and non-member employees.

3. The formula for annual computation of the patronage dividends is: The total hours worked by members (overtime hours computed at time-and-a-half) are multiplied by 150%. That number (weighted member hours) is divided by the sum of weighted member hours and unweighted non-member employee hours (overtime hours computed at time-and-a-half). The resulting ratio is multiplied by Linnton's total non-rental net earnings to calculate the total patronage dividend.

time as every other member. Each member includes his patronage dividend in his personal gross income.

The patronage dividends are distributed through bimonthly cash advances and through year-end cash distributions or credits. The advances by Linnton are not wages, but are an approximation of each member's interim share of the year-end patronage dividends.

Linnton filed its tax returns for the tax years ending March 31, 1968, through March 31, 1971. In November 1972, Linnton was notified of a proposed assessment of income tax deficiencies for those four years. The Commissioner's main objection to Linnton's tax filings was Linnton's weighting of member hours by a factor of 50% when it computed the portion of net earnings to be excluded from corporate income as patronage dividends.[4]

In December 1972, Linnton paid a $221,684 assessment, together with $34,500 in interest on the tax deficiencies.

In January 1973, Linnton filed a refund claim for each of the four tax years. In July 1973, the Internal Revenue Service issued statutory notices of disallowance for each of the claims. Linnton then filed this action.[5]

Linnton first contends that it may exclude 100% of its non-rental net earnings from its taxable income because all of those earnings are attributable to the patronage of its members. The Commissioner challenges that contention on its merits and also argues that Linnton may not raise that contention because it was not raised in Linnton's refund claims.

In the alternative, Linnton contends that its practice of weighting the hours worked by members is permissible because each hour worked by a member is at least 50% more valuable to Linnton than each hour worked by a non-member employee. The Commissioner denies this contention; he asserts that Linnton must use unweighted hours because member hours are not more valuable than non-member employee hours.

## B. *Multnomah Plywood Corporation, Civil No. 73–1017*

Multnomah is a non-profit workers' cooperative; it was organized in 1949 under Oregon business corporation statutes. Chapter 57, Oregon Revised Statutes. It operated a plywood manufacturing plant in Portland, Oregon, until the fall of 1968 when it moved its plant to St. Helens, Oregon.

Multnomah seeks a tax refund for the fiscal years ending March 31, 1966 and 1967.

During the tax years, there were 694 shares of common stock outstanding. The par value of each share is $2,500. Ownership of common stock is a condition of membership; with one exception, each member owned four shares during the tax years. Each member has equal voting rights, regardless of the number of shares he owns.

Each member with four shares is entitled to work for Multnomah. During the tax years, an average of 154 members worked for Multnomah. In addition, an average of 142 persons worked for Multnomah as non-member employees.

Multnomah's members operate and manage the business of the cooperative in essentially the same way as Linnton's members.

Like Linnton, Multnomah pays its non-member employees an hourly wage. Their wages are determined by the duties they perform.

Unlike Linnton, which pays its members a bimonthly advance on projected patronage dividends, Multnomah pays its members an hourly wage. Each member

---

4. The Commissioner also objected to the exclusion from corporate income of certain interest income to Linnton. The Commissioner subsequently allowed this exclusion for this case.

5. Linnton seeks the following refunds: 1968—$22,235, 1969—$97,159, 1970—$20,241, and 1971—$46,004, with interest at 6% from the date of each payment.

of Multnomah receives the same hourly wage regardless of his duties.[6]

This uniform hourly wage rate for members is approximately 130% of the average union hourly wage rate of Multnomah's non-member employees under an industry-wide collective bargaining agreement with the International Woodworkers of America.

Multnomah deducts the wages paid to both its members and its non-member employees as a business expense under Section 162 of the Internal Revenue Code of 1954. After it deducts these wages and other business expenses to determine net earnings, Multnomah distributes part of the net earnings to its members as patronage dividends, and then excludes that amount from its taxable corporate income. The total patronage dividend is calculated by determining the portion of net earnings attributable to the work of members. Multnomah's formula for this determination is identical to Linnton's, except that Multnomah weights member hours by 30% instead of 50%.[7]

Multnomah filed its tax returns for the tax years ending March 31, 1966 and 1967. In May 1969, the Internal Revenue Service sent Multnomah a notice of deficiency for those two years. The Commissioner's main objections to Multnomah's tax filings were Multnomah's deduction as a business expense of the "wages" paid to its members and Multnomah's weighting of member hours by a factor of 30%.[8] The Commissioner recomputed Multnomah's taxes, handling the members' "wages" as advances on patronage dividends and using a weighting factor of 10% instead of 30%.

In February 1970, Multnomah paid a $145,658 tax assessment and $27,355 in assessed and accrued interest.

In February 1970, Multnomah filed a refund claim for each of the two tax years. In January 1974, the Internal Revenue Service issued statutory notices of disallowance for each of the claims. Multnomah then filed this action.

Multnomah first contends that it may exclude 100% of its net earnings from its taxable income because all of those earnings are attributable to the patronage of its members. Here, as in Linnton, the Commissioner challenges that contention on its merits and also argues that Multnomah may not raise that contention because it was not raised in Multnomah's refund claims.

Multnomah also contends that its practice of weighting the hours worked by members is permissible because each hour worked by a member is at least 30% more valuable to Multnomah than each hour worked by a non-member employee. Here, as in Linnton, the Commissioner denies this contention; he asserts that Multnomah must use unweighted hours because member hours are no more valuable than non-member employee hours.[9]

Multnomah next contends that it may deduct the wages paid to its members as a business expense. The Commissioner denies this contention. He asserts that these payments must be treated not as wages but as advances on patronage dividends.

Multnomah finally contends that its payments from a partially-owned supplier are properly subject to patronage dividend treatment because the payments

**6.** There are relatively small differences in the cost of insurance coverage which Multnomah provides each member.

**7.** Multnomah does not credit overtime hours as time-and-a-half for members or non-member employees in computing the patronage dividend.

**8.** The Commissioner also said that Multnomah should not have excluded from its gross income certain payments that Multnomah received from one of its suppliers—a glue facto-

ry which Multnomah and another plywood manufacturing company jointly owned.

The Commissioner also objected to the exclusion from corporate income of certain interest income to Multnomah. The Commissioner subsequently allowed this exclusion for this case.

**9.** In spite of this contention by the Commissioner, he allowed Multnomah to weight member hours by 10% during the tax years and by 30% in earlier tax years.

constitute a reduction in the cost of supplies. The Commissioner contends that these payments are net earnings derived from business done with a non-member of the cooperative.

## III. *Analysis*

### A. *Exclusion of 100% of Net Earnings*

Both Linnton and Multnomah contend that they may exclude from taxable corporate income 100% of their net earnings derived from producing and marketing their plywood and plywood byproducts. They argue that all of those net earnings are attributable to the patronage of their members (patronage earnings).

The Commissioner asserts that the plaintiffs are precluded from raising this argument here because they did not raise it in their claims for refunds. The Commissioner also asserts that the argument must be rejected on its merits.

■ I agree with the Commissioner that the plaintiffs are foreclosed from raising this ground for recovery here. A taxpayer may not raise at trial a ground for tax refund which was not set forth in a refund claim. 26 U.S.C. § 7422(a); 26 C.F.R. § 301.6402–2(b)(1); *Ladd v. Riddell,* 309 F.2d 51, 54 (9th Cir. 1962). The plaintiffs did not raise the issue of the 100% exclusion before the Commissioner; they may not do it here.

### B. *Weighting of Member Hours*

Both Linnton and Multnomah next contend that they may use weighted member hours to determine the portion of net earnings attributable to the work of members; those net earnings may be excluded from taxable corporate income as patronage dividends. I hold that the plaintiffs may use weighted member hours.

■ Section 1388(a) of the Internal Revenue Code of 1954 provides that a patronage dividend must be "determined by reference to the net earnings of the organization from business done with or for its patrons. [A patronage dividend] does not include any amount paid to a patron to the extent . . . such

amount is out of earnings other than from business done with or for patrons . . . ." A cooperative's net earnings must, therefore, be divided into two categories—first, net earnings from business with or for patrons, and second, net earnings from business with or for non-patrons. Only earnings from the first category may be excluded as patronage dividends.

In a workers' cooperative, such as Linnton or Multnomah, the "business" which the patrons and non-patrons do with the cooperative is work. Workers "sell" their services to the cooperative. Therefore, to compute its patronage dividend, a workers' cooperative must determine the portion of its net earnings which is from the work of patrons and the portion from the work of non-patrons.

To measure the relative contributions to net earnings of patrons and non-patrons, the Commissioner urges the use of a simple arithmetic approach based solely on the number of hours worked both by patrons and by non-patrons. If, for example, 90% of all hours worked in the cooperative during a year were worked by patrons, then 90% of the net earnings of the cooperative would be deemed from "business done with . . . patrons" and excludable as a patronage dividend.

The plaintiffs object to this simple arithmetic approach because, they contend, it ignores the greater contribution to net earnings by members (patrons) for every hour worked over that of non-member employees (non-patrons). The plaintiffs contend that they should be allowed to weight member hours to reflect the greater contribution to net earnings of each member hour.

I believe that Section 1388 permits weighting of member hours if those hours are more valuable than non-member hours. Whether member hours are more valuable, and, if so, how much more valuable, are questions of fact.

Workers and managers, based on personal experience and observation, and experts, based on elaborate studies, testi-

fied on the relative value of work performed by member and non-member workers. On the basis of this evidence, I am convinced that members are more valuable to the plaintiffs than non-member employees and that some weighting of member hours is appropriate.

■ It is difficult to determine how much weighting is appropriate here. Some courts, in "reasonable compensation" cases under 26 U.S.C. § 162, have held that a determination by a board of directors on the value of services rendered to the corporation is entitled to a presumption that it is reasonable. *Ox Fibre Brush Co. v. Blair*, 32 F.2d 42 (4th Cir.1929), *aff'd sub nom. Lucas v. Ox Fibre Brush Co.*, 281 U.S. 115, 50 S.Ct. 273, 74 L.Ed. 733 (1930). I do not go that far, but I believe that the determination of the boards here is entitled to some weight. Plaintiffs should be permitted to use the weighting factors adopted by their boards of directors, unless those weighting factors are unreasonable.

■ Here, Linnton used a weighting factor of 50% and Multnomah used 30%.[10] On the evidence before me, I believe that these are reasonable estimates of the higher value to the plaintiffs of member hours compared to non-member employee hours.

For the plaintiffs, Millard B. Hahn, a consultant to the plywood industry in the Pacific Northwest for 27 years, presented his detailed studies comparing the productivity of the plaintiffs' plywood mills with the productivity of comparable non-cooperative plywood mills.[11] On the basis of these studies and his extensive experience as a consultant to both cooperative and non-cooperative

plywood mills, Hahn concluded that member hours were at least 50% more valuable to each plaintiff than non-member employee hours. Katrina Berman, an economist who has studied workers' cooperatives,[12] agreed with Hahn's appraisal. Other witnesses, including Cleve Ramsey and Joseph Johnson, also agreed; Cleve Ramsey has been superintendent of both cooperative and non-cooperative plywood mills, and Joseph Johnson has worked in both cooperative and non-cooperative mills. I was impressed not only with the frankness, but also with the knowledge and experience of these witnesses. I was equally impressed with the testimony of Peter Koehler and Donald Evenson who gave similar testimony.

William McAlister and James Mahar, who testified for the Commissioner as experts, attacked Hahn's methodology in his productivity studies and then adjusted Hahn's computations. McAlister concluded that workers in cooperative plywood mills are less productive than workers in comparable non-cooperative mills, and that, within the plaintiffs' mills, the members are less productive than the non-member employees. Mahar, an economist with the Internal Revenue Service, testified that Linnton's workers are up to 15% more productive, and that Multnomah's workers are no more productive, than workers in comparable non-cooperative plywood mills.

I find that the testimony of Hahn and Berman, as well as Ramsey, Johnson, Koehler and Evenson, was much more credible than the testimony of McAlister and Mahar. The plaintiffs' witnesses were more experienced and their testimony was more forthright. I find that

---

10. Multnomah had used 50% in earlier tax years, but, to avoid confrontation with the Internal Revenue Service, it used only 30% during the tax years at issue here.

The wages that Multnomah pays its members are approximately 30% higher than the average wages it pays its non-member employees.

11. Comparing contributions to fixed overhead per man/hour, Hahn's studies show that during the tax years Linnton was 90.1% and Multnomah was 39.8% more productive than the comparable non-cooperative mills.

12. Ms. Berman published a book in 1967 entitled *Worker-Owned Plywood Companies—An Economic Analysis*.

the testimony of McAlister was evasive, equivocal and often unbelievable.

The evidence showed that members are more productive than non-member employees; they work faster and do better work. They strive to cut costs, increase efficiency and produce better plywood. Members usually can and do perform more than one job, thereby providing greater flexibility for job assignments. They have a lower turnover rate, require less supervision, and are more experienced than non-member employees. In addition to their production duties, they make many on-the-line management decisions, and they make broad management decisions about the direction of the company. Their conscientious performance influences the performance by non-member employees. In my view, these greater contributions to net earnings by members result from the members' incentive to make the cooperative more profitable because they, as owners, will be the direct beneficiaries of increased profitability.

On the basis of these factors,[13] I find that the plaintiffs' weighting factors are reasonable.[14]

### C. Deductibility of Wages for Members of Multnomah

■ Unlike Linnton, which pays its members a bimonthly advance against projected patronage dividends, Multnomah pays its members an hourly wage. Multnomah deducts the wages paid to both its members and its non-member employees as a business expense under Section 162 of the Internal Revenue Code of 1954, 26 U.S.C. § 162. After deducting those wages and other business expenses to determine net earnings, Multnomah distributes a portion of the net earnings to its members as a patronage dividend, and then, as permitted by Subchapter T, excludes that amount from its taxable corporate income.

The Commissioner contends that Multnomah's wage payments to its members cannot be deducted under Section 162, but must be treated as advances against patronage dividends. Multnomah contends that Section 162 and Subchapter T permit it to treat the payments to its members as wages and to deduct them as a business expense under Section 162. I agree with Multnomah.

Under the Commissioner's approach, all payments to members, both bimonthly "wage" payments and year-end distributions, are excluded as a patronage dividend. Under Multnomah's approach, the bimonthly wage payments to members are deducted as a business expense, and the year-end distributions are excluded as a patronage dividend. Although these two approaches are conceptually different, there is no significant difference in the total amount which may be deducted and excluded from earnings; the tax is substantially the same.[15]

■ In my view, Section 162 and Subchapter T permit either approach.

The Commissioner next contends that, even if Multnomah may deduct wages under Section 162, that deduction applies

---

13. I have not considered the members' contributions to the cooperatives in the form of capital and entrepreneurial risk. For workers' cooperatives, the Section 1382 patronage dividend exclusion is based on the members' contribution in the form of work, not capital or entrepreneurial risk.

14. This finding is supported by the decision of this Court in *Multnomah Plywood Corporation v. United States,* Civil No. 71-228, June 7, 1972. There, Judge Belloni found that Multnomah's compensation paid to its members was reasonable and could be deducted as a business expense under 26 U.S.C. § 162, although the members' compensation was higher than

that paid to the non-member employees. *See also Olympia Veneer Company, Inc.,* 22 B.T.A. 892 (1931).

15. There are small differences caused by two of Multnomah's practices. First, the uniform member wage is fixed at *approximately* 30% above the average non-member employee wage, but the weighting factor used in computing the patronage dividend is *exactly* 30%. Second, in computing wages, Multnomah pays its members and non-member employees time-and-a-half for overtime hours, but in computing the patronage dividend, overtime hours are treated the same as straight time.

only to determining *taxable income*. He contends that, in computing the *net earnings* under Section 1388(a) which are subject to patronage dividend treatment, those wages, together with wages to non-member employees, must be included in the net earnings.[16]

I disagree with the Commissioner. Although his approach may be permissible, it is not required by Subchapter T. As long as the wages to members and non-member employees are reasonable, as they are here, Multnomah may deduct them under Section 162 in computing taxable income and under Section 1388 in computing the net earnings subject to patronage dividend treatment.

**D.** *Excludability of Dividends from a Partially-Owned Supplier*

Astoria Plywood Corporation, another workers' cooperative, and Multnomah each own 50% of West Coast Adhesives Company, a glue manufacturer which they organized to supply their glue requirements. During the tax years, Multnomah received dividends of $22,500 on more than $600,000 business it did with West Coast Adhesives. Multnomah included those dividends in its net earnings subject to patronage dividend treatment. The Commissioner contends that those dividends are not subject to patronage dividend treatment because they are from an investment and not from business done with or for patrons. Multnomah contends that the dividends are merely a reduction in the price of glue it purchased from its partially-owned supplier for use in manufacturing plywood.

I hold for Multnomah. Glue is essential to the manufacture of plywood, and the arrangement which Multnomah made to produce its glue through a supplier which it and another plywood workers' cooperative organized is reasonably related to the business done with or for its patrons.

This opinion shall constitute Findings of Fact and Conclusions of Law pursuant to Fed.R.Civ.P. 52(a).

The parties are directed to compute the amounts due to each plaintiff and to submit forms of judgments in both cases in accordance with this opinion.

---

**16.** The Commissioner admits that, in this case, the same result is obtained under either approach, but it may make a difference under facts not present here.