**LAND O'LAKES, INC., formerly Land O'Lakes Creameries, Inc., a Minnesota corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 3–71–49.**

United States District Court,
D. Minnesota,
Third Division.

May 17, 1979.

Irving Clark, Harold Jordan, Doherty, Rumble & Butler, St. Paul, Minn., and Richard H. Magnuson, Minneapolis, Minn., for plaintiff.

Andrew W. Danielson, U. S. Atty., John M. Lee, Asst. U. S. Atty., Minneapolis, Minn., and D. Patrick Mullarkey, Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM & ORDER

DEVITT, Chief Judge.

This action is brought by plaintiff taxpayer, Land O'Lakes, a Minnesota cooperative, for refund of income taxes paid in 1963. Plaintiff is a "non-exempt cooperative," a status which allows it to deduct "patronage dividends" from its gross earnings, subject to the restrictions of Subchapter T of the Internal Revenue Code. *See* 26 U.S.C. §§ 1381–88 (1976). Patronage dividends, simply stated, are dividends paid to the patrons of the cooperative from the cooperative's net earnings. This matter is before the court on remand from the Court of Appeals for the Eighth Circuit. See *Land O'Lakes, Inc. v. United States*, 514 F.2d 134 (8th Cir. 1975), *rev'g* 362 F.Supp. 1253 (D.Minn.1973). The Eighth Circuit reversed this court's earlier ruling that the taxpayer was an exempt cooperative and remanded for a determination of the deductions to which the taxpayer is entitled as a non-exempt cooperative. In dispute now is the deductibility of three different types of alleged patronage dividends: (1) dividends paid pursuant to agent-buyer agreements; (2) dividends paid from the profits of Bridgeman stores owned by the taxpayer;

and (3) dividends paid from the income the taxpayer received from Class B common stock of the St. Paul Bank for Cooperatives. These three issues are discussed separately below. The evidence here consists of stipulated facts, exhibits, and the evidence received at the initial trial in 1973. The court holds that the dividends paid from each of the three sources are deductible by the taxpayer cooperative as patronage dividends.

## A. Agent-Buyer Dividends

Land O'Lakes's primary activity as a cooperative is the marketing of its members' milk and poultry products, often through outlets such as its Bridgeman stores. However, plaintiff also performs a purchasing and supply function for its members and patrons by buying and processing feed, fertilizer, and seed, and then wholesaling those items to its members. Those items also are wholesaled to independent dealers and so-called "agent-buyers." The agent-buyers generally are small, established feed and agriculture supply dealers. They market the plaintiff's products in areas where no Land O'Lakes member cooperatives or company stores are located. The normal cooperative practice would be that the agent-buyers, as patrons of Land O'Lakes, would receive a patronage dividend based on business done with or for Land O'Lakes, and there is little question that those dividend payments would be deductible by Land O'Lakes. However, Land O'Lakes here entered into an agreement with a number of the agent-buyers, whereby the patronage dividends were passed through to the farmer-customers of the agent-buyers. Land O'Lakes paid the dividends directly to the farmer-customers, based on sales slips submitted to Land O'Lakes by the agent-buyers. The IRS asserts that these dividend payments do not meet the requirements for deductible patronage dividends, as set forth in Subchapter T of the Internal Revenue Code.

The requirements for deductibility of patronage dividends are fivefold: (1) the dividend must be paid to the patron pursuant to a pre-existing obligation on the part of the cooperative; (2) at least 20% of the dividend must be paid in cash, and the rest credited to the patron's account; (3) the "distributee" must consent to the dividends being included in his gross income; (4) the dividend amount must be based on the quantity or value of business done with the cooperative; and (5) the amount of the dividend must be determined by reference to the net earnings of the cooperative from business done with or for its patrons. *See* 26 U.S.C. § 1388 (1976), and regulations promulgated thereunder. The IRS argues that, with respect to the agent-buyer issue, requirements 1 and 3 have not been met— that there was no pre-existing obligation to pay dividends to the agent-buyers, and that the agent-buyers did not agree to include the dividend amounts as income.

### 1. Pre-existing Obligation

In essence, the government's position is that there was no pre-existing obligation to pay dividends to the agent-buyers because the agent-buyers contracted to give up their rights to patronage dividends in favor of their customers. A pre-existing obligation, however, does exist. Under plaintiff's by-laws, all patrons have the right to receive dividends, and it is settled that a cooperative's by-laws may constitute the requisite pre-existing obligation to pay patronage dividends. *See, e. g., United States v. Mississippi Chemical Co.*, 326 F.2d 569, 571 (5th Cir. 1964); Treas.Reg. § 1.1388–1(a)(1). This obligation was not extinguished by the agreement between Land O'Lakes and the agent-buyers to pass the dividends through to the customers of the agent-buyers. Rather, that agreement merely constituted an assignment of the agent-buyers' rights to their customers, and the agreement was entered into freely by the agent-buyers for their own benefit as well as for the benefit of their customers and Land O'Lakes. Therefore, contrary to the government's assertions, the agent-buyers had a choice under plaintiff's by-laws to receive the dividends but validly assigned that right to their customers. Such an arrangement does not affect Land O'Lakes' right to deduct the dividend payments from

its gross income for tax purposes. *See* Rev. Rul. 65–221, 1965–2 C.B. 320.

2. *Dividends includable in "distributee's" income*

The government also contends, with respect to the agent-buyer issue, that Land O'Lakes has not satisfied the third requirement for deductibility, since the agent-buyers as patrons never agreed to include as their own income the patronage dividends passed through to their customers. Rather, it was the customers who included the dividends as income. Plaintiff correctly points out, however, that when instituting this third requirement Congress utilized the term "distributee" rather than "patron." *See* 26 U.S.C. § 1388(c)(1)(B) (1976). Plaintiff asserts that this term is broader than "patron" and would include, in the present case, the customers of the agent-buyers.

■ Although the question is a close one, the plaintiff's position is more consistent with both the language of the statute and the intent of Congress. It is clear that Congress intended by this third requirement to ensure that if the dividend was deducted at the cooperative level, it would be taxable to the party receiving the dividend. This result is achieved under the taxpayer's interpretation but would be thwarted if the government's position was adopted, since both the cooperative and the farmer-customers would be taxed on the dividends. Thus, although Congress probably did not envision this particular arrangement when enacting the third requirement, the arrangement nonetheless comes within both the spirit and technical wording of the statute and therefore the deduction should be allowed.

B. *The Bridgeman Dividends*

The second deduction at issue concerns patronage dividends paid from profits of Bridgeman stores owned by the taxpayer. Those stores sell dairy products of Land O'Lakes patrons, but also sell certain non-patron products, such as hamburgers, frozen foods, and French fries. As was noted earlier, the fifth requirement for deductibil-

ity of patronage dividends is that, *inter alia,* the dividend be computed by reference to net earnings resulting from sale of the patron's products. The government asserts that dividends paid to patrons from Bridgeman profits are attributable in part to the sale of the non-patron food products, and to that extent the dividends do not comply with the fifth requirement and thus are not deductible.

■ There can be no doubt that the government is correct in its interpretation of the law. The taxpayer counters, however, by disputing the government's view of the facts. In arguing that a portion of the Bridgeman profits are attributable to non-patron products, the IRS relies primarily upon a presumption that the patron and non-patron portions of a cooperative's business are equally profitable. *See, e. g.,* Rev. Rul. 63–58, 1963–1 C.B. 109. That presumption, though, only applies in the absence of evidence to the contrary. *See Union Equity Cooperative Exchange v. Commissioner,* 58 T.C. 397, 406 (1972). A second presumption relied upon by the government, that its method of tax assessment is presumed correct, also can be rebutted by sufficient credible evidence. *See, e. g., Natural Gas Co. v. O'Malley,* 277 F.2d 128, 130–31 (8th Cir. 1960).

■ In the present case, Land O'Lakes has met its burden and has overcome these presumptions. It did so by presenting substantial expert testimony indicating that Bridgeman stores made a profit on their dairy (patron) products and a loss on their other food (non-patron) products. Plaintiff established through extensive time and motion studies and cost accounting evidence that a great deal of the labor and other expenses resulted from preparation of the non-patron products. From this the plaintiff persuasively argued that a greater expense ratio should be allocated to non-patron products than to patron products, resulting in a net loss from non-patron products and a net profit from patron products. Furthermore, plaintiff offers a rational reason as to why the Bridgeman stores would

be willing to sell non-patron products at a net loss—to draw customers into the establishment and thereby make a profit on any dairy products purchased by those customers.

In contrast to Land O'Lakes, the government presented little evidence refuting the correctness of Land O'Lakes' computations, other than cross-examining plaintiff's experts. Instead the IRS relies on the presumptions in its favor and on *Pomeroy Cooperative Grain Co. v. Commissioner*, 288 F.2d 326 (8th Cir. 1961), which it claims stands for the proposition that the cost accounting principles relied upon by plaintiff are not permitted under Subchapter T of the Internal Revenue Code. The government's reliance on both the presumptions and *Pomeroy* is misplaced. With respect to *Pomeroy*, the Eighth Circuit did not preclude the use of cost accounting by taxpayers in allocating profit between patron and non-patron business, but rather held that a cooperative need not necessarily institute a cost accounting system for purposes of profit allocation. 288 F.2d at 333. With respect to the presumptions, they were refuted by plaintiff's substantial and credible evidence that the profits from Bridgeman stores are attributable to sale of patron products. Consequently, this second issue must be resolved in favor of the taxpayer.

C. *Dividends from Cooperative Stock Income*

■ The final issue can be disposed of summarily. From time to time, Land O'Lakes borrowed money from the St. Paul Bank for Cooperatives. The purpose of these loans, as indicated by the stipulated facts, was to finance the taxpayer's cooperative activities. To obtain these loans Land O'Lakes was required to purchase Class B common stock from the Bank for Cooperatives. The bank then paid dividends on that stock, which Land O'Lakes in turn distributed to its patrons. The issue, as with the Bridgeman issue, is whether the stock dividends resulted from patron business or from collateral sources. The IRS's own revenue rulings establish that where a loan from a bank for cooperatives "facilitates the accomplishment of the cooperative's marketing, purchasing, or service activities, the income [from the bank stock] is from patronage sources . . . ." Rev. Rul. 74–160, 1974–1 C.B. 245; Rev.Rul. 69–576, 1969–2 C.B. 166; *cf., Linnton Plywood Ass'n v. United States*, 410 F.Supp. 1100, 1108 (D.Or.1976). Since the loans in the present case were needed to facilitate plaintiff's marketing and purchasing activities, and since the stock had to be purchased to obtain the loans, income from the stock was from patronage sources and when distributed to patrons constituted deductible patronage dividends.

*Conclusion*

Each of the the three disputed distributions of cooperative profits constituted deductible patronage dividends. Therefore, defendant is ordered to grant plaintiff a refund for tax year 1963 in accordance with the principles outlined above. This memorandum and order shall constitute the court's findings of fact and conclusions of law.