LAND O'LAKES, INC., formerly Land O'Lakes Creameries, Inc., a Minnesota corporation, Appellee,

v.

UNITED STATES of America, Appellant.

No. 81–1692.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 16, 1981.

Decided April 14, 1982.

John F. Murray, Acting Asst. Atty. Gen., Michael L. Paup, Richard Farber, Gayle P. Miller, Attys., Tax Division, Dept. of Justice, Washington, D. C., for appellant; John M. Lee, Asst. U. S. Atty., Minneapolis, Minn., of counsel.

Irving Clark, St. Paul, Minn., for Land O'Lakes, Inc.; Richard H. Magnuson, General Counsel, Land O'Lakes, Inc., Minneapolis, Minn., of counsel.

Before LAY, Chief Judge, and HENLEY and ARNOLD, Circuit Judges.

HENLEY, Circuit Judge.

This appeal originates in a refund suit filed in 1971 to recover certain taxes paid in 1963 by plaintiff Land O'Lakes, Inc., a Minnesota cooperative. The district court's decision in 1973 holding plaintiff exempt under 26 U.S.C. § 521 was reversed by this court in 1975 and remanded for resolution of the issues resulting from plaintiff's nonexempt status. *Land O'Lakes, Inc. v. United States,* 514 F.2d 134 (8th Cir. 1975), *rev'g* 362 F.Supp. 1253 (D.C.Minn.1973). On remand, the parties settled all but three issues which were resolved by the district court in favor of plaintiff, *Land O'Lakes, Inc. v. United States,* 470 F.Supp. 238 (D.C. Minn.1979), and judgment was entered on March 13, 1981 for $155,638.97. The government now appeals. We affirm in part and reverse in part.

As a nonexempt cooperative, plaintiff is allowed under Subchapter T of the Internal Revenue Code to deduct "patronage dividends" from its gross earnings. 26 U.S.C. § 1382. The district court described the applicable requirements for deductibility as follows:

(1) the dividend must be paid to the patron pursuant to a pre-existing obligation on the part of the cooperative; (2) at least 20% of the dividend must be paid in cash, and the rest credited to the patron's account; (3) the "distributee" must consent to the dividends being included in his gross income; (4) the dividend amount must be based on the quantity or value of business done with the cooperative; and (5) the amount of the dividend must be determined by reference to the net earnings of the cooperative from business done with or for its patrons.

470 F.Supp. at 240. *See* 26 U.S.C. § 1388(a) and (c).

The issues in this case concern the deductibility of three different types of dividends paid by the cooperative: (1) dividends paid pursuant to certain agent-buyer agreements; (2) dividends paid from the profits of Bridgeman stores owned by the cooperative; and (3) dividends paid from income received by the cooperative from Class B common stock issued by the St. Paul Bank for Cooperatives.

## I. AGENT–BUYER DIVIDENDS

Although Land O'Lakes' primary activity is marketing its members' milk and poultry products, it also serves a purchasing and supply function by wholesaling feed and fertilizer to its members or to independent dealers, called agent-buyers, who in turn sell to farmer-customers. A number of these agent-buyers entered into agreements with Land O'Lakes in accordance with which the patronage dividends, normally payable to the agent-buyers, were paid directly to the farmer-customers by qualified check,[1] based on sales slips forwarded to the cooperative by the agent-buyers. The government challenges the classification of these payments as patronage dividends on the grounds that they did not meet requirements (1) and (3); that is, they were not

---

1. A qualified check is one containing a statement to the effect that by endorsing the check, the payee consents to include the amount of the check in his income. 26 U.S.C. § 1388(c)(4).

paid to the agent-buyers[2] pursuant to a pre-existing obligation, and the agent-buyers did not consent to include the payments in their own income.

### A. Pre-existing Obligation

■ It is undisputed that under the by-laws of Land O'Lakes, all patrons are entitled to receive dividends, and that "a cooperative's by-laws may constitute the requisite pre-existing obligation to pay patronage dividends." *Land O'Lakes, Inc. v. United States*, 470 F.Supp. at 240, *citing* Treas.Reg. § 1.1388–1(a)(1). The district court characterized the agent-buyer agreement as an assignment of the right to receive dividends and concluded that it did not extinguish the pre-existing obligation created by the cooperative's by-laws, nor did it affect the cooperative's right to deduct the dividends. The government contends, however, that the agreement was a "precondition" to doing business with Land O'Lakes, and therefore constituted a waiver of the right to dividends and effectively dissolved the requisite pre-existing obligation.[3]

Both parties and the district court cite Rev.Rul. 65–221, 1965–2 Cum.Bull. 320, in support of their positions. Although we recognize that this ruling does not address the precise issue before us,[4] we think it is helpful by analogy. In that case, the by-laws of three different cooperatives provided that dues owed by member-patrons to a farmers' educational organization could be deducted by the cooperative from patronage dividends and paid directly to the organization. Each cooperative employed a slightly different method: the first required that the member authorize the deduction by a written "check-off"; the second provided that dues would automatically be deducted unless the member submitted a written "negative check-off"; and the third gave no option to the member, but required as a condition of membership that the dues be deducted. It was determined that the optional deductions qualified as patronage dividends but the mandatory deduction did not.

The government argues that the agent-buyer agreements are analogous to the third situation above, because, it is asserted, the agent-buyers had no option, but were required, in order to do business with Land O'Lakes, to agree to the provision transferring dividend payments to the farmer-customers. However, it was stipulated that Land O'Lakes did business with a number of independent dealers who did not enter into the agent-buyer agreements. There was no showing that, had the agent-buyers not entered into these agreements, they could not have done business with Land O'Lakes and received patronage dividends as did these other independent dealers. It appears to this court that the agent-buyer agreements were analogous to the optional deductions of dues rather than to the mandatory deductions.

We think that the district court correctly concluded that the pre-existing obligation created in the cooperative's by-laws was unaffected by the payment of dividends directly to the farmer-customers.[5]

---

**2.** It is undisputed that the agent-buyers, not the farmer-customers, were the patrons of Land O'Lakes. *See Land O'Lakes, Inc. v. United States*, 470 F.Supp. at 240. *Cf. Land O'Lakes, Inc. v. United States*, 514 F.2d at 138–39.

**3.** The relevant contract language reads as follows:

> All patronage, distributions, refunds and payments of Land O'Lakes based upon Agent-Buyer's purchases shall belong to and be the property of the farmer-customers of said Agent-Buyer in proportion to the purchases of each customer as calculated on the sales slips returned to Land O'Lakes by the Agent-

Buyer, and shall be distributed directly by Land O'Lakes to the farmer-customer.

**4.** Rev.Rul. 65–221 addresses the issue of whether certain payments by the cooperative constitute patronage dividends "paid in money," *see* 26 U.S.C. § 1388(c)(1), and expressly does not address dividends paid by qualified check.

**5.** Because the issue before this court is the deductibility of the dividends from the cooperative's gross earnings, we need not address the issue of whether the agent-buyers may escape tax liability by assigning their patronage dividends to farmer-customers.

### B. "Distributee's" Consent to Include in Income

26 U.S.C. § 1382(b) provides that patronage dividends may be paid by qualified written notice of allocation which is defined in § 1388(c)(1) as a written notice of allocation which the "distributee" consents to include in his own income. The government contends that the term "distributee" is synonymous with "patron," and that the payments made to the farmer-customers are not deductible as patronage dividends because the patrons, that is, the agent-buyers, did not consent to include the dividends in their income.[6] In support of this position, the government first points out that the title of Subchapter T is "Cooperatives and Their Patrons," and that 26 U.S.C. § 1385(a), to which § 1388(c)(1) refers, is headed "Amounts Includible in Patron's Gross Income."[7] In addition, the government relies on Committee Reports wherein the term "patron" is used to identify the person who must consent to include the dividend in his income. *See* S.Rep.No.1881, 87th Cong., 2d Sess. 111, *reprinted in* 1962 U.S.Code Cong. & Ad.News 3304.

The district court concluded that Congress intended the term "distributee" to be broader than the term "patron," and we find sufficient support for this conclusion. The legislative history indicates that, in passing Subchapter T, Congress was trying to close a gap in the prior law that allowed the cooperative to deduct certain dividends which were not taxable to the recipient. S.Rep.No.1881, *supra.* This suggests that Congress' purpose in using the term "distributee" was "to ensure that if the dividend was deducted at the cooperative level, it would be taxable to the party receiving the dividend." *Land O'Lakes, Inc. v. United States,* 470 F.Supp. at 241. We find no reason why "distributee" should not be interpreted in its ordinary everyday sense.

*Conway County Farmers Ass'n v. United States,* 588 F.2d 592, 598 (8th Cir. 1978). We think that the district court's interpretation is in accord with the language of the statute and with the legislative history, and therefore conclude that the dividends paid to the farmer-customers pursuant to the agent-buyer agreements are properly deductible by Land O'Lakes as patronage dividends.

### II. BRIDGEMAN DIVIDENDS

The second issue concerns dividends paid from the profits of Bridgeman stores owned by Land O'Lakes. The stores, described as "ice cream oriented food shops," sell both dairy, or patron, products and non-patron foods such as hamburgers and french fries. The fifth requirement for deductibility is that the amount of patronage dividends must be based on income derived from business done with or for patrons. 26 U.S.C. § 1388(a)(3). Thus, only those portions of dividends attributable to income from the sale of patron products may be deducted by Land O'Lakes.

The cooperative kept no records in 1963 reflecting the apportionment of profits based on the sales of patron and non-patron products. The IRS therefore allocated profits according to the ratio of sales of patron or non-patron products to total sales.[8] The district court found, however, based on evidence introduced by the cooperative, that one hundred per cent of the profits were attributable to the sale of patron products, thus allowing deduction of the full amount of the dividends. The government contends that the evidence offered by Land O'Lakes is not sufficient to rebut the presumed correctness of the Commissioner's assessment. *Northern Natural Gas Co. v. O'Malley,* 277 F.2d 128, 130 (8th Cir. 1960). *See Union Equity Cooperative*

---

**6.** As noted earlier, the dividends were paid to the farmer-customers by qualified check. Thus, the farmer-customers, not the agent-buyers, agreed to include the dividends in their income.

**7.** We note, however, that 26 U.S.C. § 1385(a) begins "Except as otherwise provided . . . , each

*person* shall include in gross income . . . ." (Emphasis added.)

**8.** Such a method has been held reasonable in the absence of contrary proof. *Union Equity Cooperative Exchange v. Commissioner,* 58 T.C. 397, 406 (1972).

*Exchange v. Commissioner*, 58 T.C. 397, 406 n.7 (1972) ("Since the burden would be on [the taxpayer] to show that. [the government's] determination was erroneous, . . . [the taxpayer] might then be put to the very difficult proof of the respective profitableness of member and nonmember business.")

The weight properly given to the cooperative's evidence depends in part on the validity of a one-week study conducted in 1970 by Land O'Lakes, for purposes of this litigation, of ten Bridgeman stores in the Minneapolis area.[9] The study purports to show that the labor cost attributable to the sale of non-patron products was significantly higher than the labor cost attributable to the sale of patron products.[10] Assuming that a one-week study conducted seven years after the tax year in question could accurately reflect the labor cost division in 1963, and we are not persuaded by the evidence that this one does, we find that computations based on the study suffer from additional defects.

It is undisputed that some items sold in Bridgeman stores are a combination of patron and non-patron products, such as cheeseburgers.[11] When allocating direct labor costs to the preparation of patron and non-patron products, the evidence indicates that at least some portion of direct labor

attributed to non-patron products was based on these combination items with no adjustment for the inclusion of patron products. We recognize the difficulty of separating the labor costs with respect to these combination items, *see Pomeroy Cooperative Grain Co. v. Commissioner*, 288 F.2d 326, 333 (8th Cir. 1961), but if combination items are classified as non-patron products for purposes of direct labor cost allocation, it seems to us that such classification should be consistently used. However, when dividing total sales into patron and non-patron sales, the cooperative adjusted the figures so that the portion of sales representing patron products sold in combination food items was subtracted from sales of non-patron products and added to the sales of patron products. Furthermore, it appears that these adjusted sales figures were used in allocating indirect labor costs.[12] The resulting ratio of labor cost to sales consequently was distorted; labor cost attributed to non-patron products was exaggerated, while labor cost attributed to patron products was understated. More importantly, such inconsistent classification affects the profit-loss computations for both patron and non-patron products. The accuracy of taxpayer's profit-loss computations are thus called into question not only by the doubt-

9. The government challenges the admissibility of this study as hearsay. We think, however, that the study was properly admissible and that the government's arguments pertain to the weight of the evidence rather than its admissibility.

10. This study was allegedly based on visual observation of the preparation and serving of patron and non-patron food items. Costs were then computed based on 1963 wage rates.

11. Schedule A of taxpayer's Exhibit 3 shows the inclusion of patron (dairy) products in the sales and costs of non-patron (non-dairy) products as follows:

FOOD DEPARTMENT BREAKDOWN

|  | COSTS | REPRESENTS SALES |
|---|---|---|
| NON-DAIRY | | |
| Outside Purchases | 311,180.26 | 791,074.62 |
| DAIRY | | |
| Inter-Company Purchases | 54,647.04 | 138,944.92 |
| TOTAL | 365,827.30 | 930,019.54 |

12. The resulting allocations of labor costs and sales are reflected in Schedule B of taxpayer's Exhibit 3 as follows:

GENERAL LABOR ALLOCATION

|  | DAIRY | NON-DAIRY |
|---|---|---|
| LABOR COST | | |
| Direct – Grill and Food Prep. | -- | 138,499.68* |
| Indirect – Allocation on Sales Ratio | 261,114.76 | 146,928.41 |
| Total | 261,114.76 | 285,428.09 |
| SALES | 1,273,162.25 | 930,019.54 |
| Adjustment for dairy products used in combination food items | 138,944.92 | (138,944.92) |
| TOTAL | 1,412.017.17 | 791,074.62 |

*includes labor cost attributable to patron (dairy) products sold in combination food items.

ful validity of the underlying study, but also by the inconsistent classification of patron products sold in combination food items.

█ We conclude that the evidence offered by Land O'Lakes is insufficient to rebut the presumed correctness of the Commissioner's assessment. This portion of the district court's decision must accordingly be reversed.

## III. BANK STOCK DIVIDENDS

The final issue involves dividends paid by Land O'Lakes to its patrons from income received from stock owned by the cooperative in the St. Paul Bank for Cooperatives. Land O'Lakes borrowed money from the bank for the stipulated purpose of financing its cooperative activities. In order to obtain the loans, the cooperative was required to purchase Class B common stock from the bank. Dividends from the bank stock were then distributed to the cooperative's patrons.

As with the Bridgeman issue, the government contends that the source of these dividends was not patronage business, and that the payments therefore cannot be deducted as patronage dividends. The district court applied the test set forth in Rev.Rul. 74–160, 1974–1 Cum.Bull. 245. If the loan actually "facilitates the accomplishment of the cooperative's marketing, purchase, or service activities, the income . . . is from patronage sources." 470 F.Supp. at 242. On the other hand, Rev.Rul. 74–160 provides that if the transaction "merely enhances the overall profitability," the income will not be considered to be from patronage sources. The government argues that because the payment of dividends by the bank to the cooperative is not dependent on the amount of the loan and because the cooperative could have borrowed money elsewhere, there was not a sufficient relationship between the loan and the stock dividends for subsequent payments to patrons to qualify as patronage dividends.

We do not think the transactions in the present case are significantly distinguishable from those in Rev.Rul. 74–160 and Rev.

Rul. 69–576, 1969–2 Cum.Bull. 166, both of which were cited by the district court. In Rev.Rul. 74–160 the taxpayer made loans to its chief supplier and distributed the interest received as patronage dividends. In Rev.Rul. 69–576 the taxpayer borrowed money to finance the acquisition of supplies from a bank cooperative, and as the bank distributed net earnings to its patrons, including the taxpayer, the taxpayer passed the dividends along to its patrons. In both cases the IRS found that the transactions actually facilitated the cooperative's activities. See also, Linnton Plywood Ass'n v. United States, 410 F.Supp. 1100, 1108 (D.C. Or.1976).

█ In the present case, the money borrowed from the bank was used to finance cooperative activities and the purchase of stock was necessary to obtain the loan. While it may be true that Land O'Lakes could have obtained loans elsewhere, the government concedes that other loans would have been at less favorable terms. Thus, we conclude that because the transactions actually facilitated the cooperative's activities by providing financing on terms favorable to the cooperative, the income from the bank stock was from a patronage source and therefore was properly deductible as a patronage dividend.

For the above reasons, we affirm those portions of the district court's decision allowing Land O'Lakes to deduct the agent-buyer dividends and the bank stock dividends, but reverse so much of the district court's decision as allows full deduction of the Bridgeman store dividends, and remand for further proceedings consistent with this opinion.