## TWIN COUNTY GROCERS, INC.

### v.

### The UNITED STATES.

### No. 473–81T.

United States Claims Court.

June 8, 1983.

Alvin M. Stein, New York City, for plaintiff; Howard Denburg and Parker, Chapin, Flattau & Klimpl, New York City, of counsel.

David C. Hickman, with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., Washington, D.C., for defendant; Theodore D. Peyser and Robert S. Watkins, Washington, D.C., of counsel.

### ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

### OPINION

SPECTOR, Senior Judge.

This tax case is submitted on plaintiff's motion, and defendant's cross-motion, for summary judgment. The motions, together with supporting briefs, were also the subject of comprehensive oral argument. The material facts are largely stipulated, and present no real issue. But a close and troublesome legal issue grows out of the application of the relevant Internal Revenue Code provisions and related authorities to those facts.

*Statement of Facts*

Plaintiff is a nonexempt retail food distribution cooperative within the meaning of Section 1381(a)(2) of the Internal Revenue Code of 1954.[1] Its shareholders and nonshareholder member-patrons operate retail grocery stores or supermarkets in northern New Jersey and in the New York City metropolitan area. Plaintiff functions as a purchasing, warehousing and distribution

---

1. Subchapter T—Cooperatives and Their Patrons
   Part I—Tax Treatment of Cooperatives
   § 1381. Organizations to which part applies.
   (a) In general.—This part shall apply to—

   \* \* \* \* \* \*
   (2) any corporation operating on a cooperative basis *other than* an organization—
   (A) which is *exempt* from tax under this chapter, \* \* \*. [Emphasis supplied.]

center for the benefit of its member-patrons. During the periods in issue, it performed none of these functions with nonpatrons.

Plaintiff earned net income of $2,405,295 during fiscal year 1975, and $2,586,793 and $3,030,740, respectively during the following two fiscal years. This included the interest income at issue in this case, as hereinafter described. In accordance with its bylaws, it paid out to its patrons, and deducted as "patronage dividends", its entire net earnings in each of those years.[2]

For fiscal years 1975–1977, plaintiff reported interest *expense* of $527,363, $488,060 and $454,203 respectively. These amounts were combined and shown on a schedule with interest *income* of $37,695, $79,790 and $57,892 during those three tax years. Plaintiff had made several purchases of short-term certificates of deposit out of its cash surpluses in those years. The interest income at issue was derived from those instruments. The certificates were purchased from an independent bank which was, of course, not a member of the food cooperative. Purchases were made in the belief that this was the most prudent manner of utilizing any cash surpluses, pending a need for their use in the cooperative's business. There was no significant relationship between plaintiff's ability to obtain needed loans and the purchase of the certificates of deposit from the bank. Income generated by the certificates did, of course, reduce to that extent the amounts plaintiff would otherwise have needed to borrow when its books of account reverted to a deficit position.

Plaintiff alludes in its brief to amounts which it borrowed from a bank "for the purpose of lending such amounts to certain members of the cooperative * * * to help the members finance fixed asset acquisitions in their stores." But no evidence was offered as to the extent of this lending activity or of its significance, if any, as a service provided to member-patrons, or of the relationship of interest earned on certificates of deposit to a lending service to members. Plaintiff also makes reference to borrowings *from* its members "to finance fixed asset acquisitions, working capital, and other *corporate* purposes." (Emphasis supplied.) It is stated that these loans to plaintiff by its members grew out of "the request of its members that they lend money to the cooperative for such purposes. * * The reason for members making excess investments in the plaintiff was to earn interest at the prime rate."

This case arose when the Commissioner of Internal Revenue assessed and collected income taxes from the plaintiff on interest income generated by the certificates of deposit even though these funds were distributed in their entirety along with the other earnings above described as "patronage dividends" to member-patrons. It is the Commissioner's view that these distributions of interest income are not deductible "patronage dividends" because the interest generated by the certificates of deposit did not constitute earnings from business done "with or for" the plaintiff's patrons, within the contemplation of § 1388(a)(3) of the Code.[3]

The following amounts in taxes and interest have been assessed for the periods shown:

| Fiscal Year Ending | Tax | Interest |
|---|---|---|
| August 2, 1975 | $ 8,460 | $2,715.37 |
| July 31, 1976 | 27,251 | 6,678.92 |
| July 30, 1977 | 13,547 | 2,371.93 |

\* \* \* \* \* \*

(3) which is determined by reference to the net *earnings* of the organization *from business done with or for its patrons*.
Such term does *not* include any amount paid to a patron to the extent that (A) such amount is out of *earnings other than from business done with or for patrons,* * * *. [Emphasis supplied.]

---

**2.** The pay-out to patrons was in proportion to the quantity of business done with each in the course of each fiscal year.

**3.** 26 U.S.C. § 1388 provides:
(a) Patronage dividend.—For purposes of this subchapter, the term "patronage dividend" means an amount paid to a patron by an organization to which part I of this subchapter applies—

Following payment of the assessed deficiencies and interest, plaintiff filed a claim for refund which was denied, thus laying the foundation for this refund suit.

### Discussion

As defendant correctly observes, plaintiff is a non-exempt cooperative. Hence its earnings are taxable unless otherwise specifically exempt. Both parties recognize that plaintiff's earnings from business done with or for its member-patrons, and distributed back to them as patronage dividends, are specifically exempt [4] and there is no quarrel with respect to the bulk of the patronage dividends consisting of earnings from purchasing, warehousing and distribution business "with or for" plaintiff's patrons. However, the interest income at issue was generated by short-term certificates of deposit purchased from a bank which is not a member-patron. It is, therefore, not regarded as "earnings * * * from business done *with* * * * its patrons." (Emphasis supplied.)

Plaintiff argues that the interest income qualifies as "earnings * * * from business done * * * *for* its patrons" (Emphasis supplied) because putting its occasional cash surpluses to work earning interest serves to reduce to that extent the cooperative's need to borrow funds and to pay out interest when its books of account revert to a more normal deficit position and its need for capital increases. As plaintiff states the issue in its supporting brief:

Will interest income generated by Certificates of Deposit which are purchased to facilitate the purchasing, merchandising and distributing function of a nonexempt cooperative be a deductible patronage dividend when distributed to the cooperative's patrons.[5]

Interestingly, both parties rely on essentially the same authorities to support their respective arguments. We are cited to Treasury Regulations on Income Tax (1954

4. Note 3, *supra.*

5. As earlier mentioned, plaintiff also alludes to a lending service to its members, but the extent of this activity, and the extent to which it is

Code (26 C.F.R.)), which provide in pertinent part as follows:

§ 1.1382–2 *Taxable income of cooperatives; treatment of patronage dividends.*

(a) *In general.*—(1) In determining the taxable income of any cooperative organization to which part I, subchapter T, chapter 1 of the Code, applies, there shall be allowed as deductions from gross income * * * the deductions with respect to patronage dividends provided in section 1382(b) and paragraphs (b) and (c) of this section.

\* \* \* \* \* \*

§ 1.1382–3 *Taxable income of cooperatives; special deductions for exempt farmers' cooperatives.*

\* \* \* \* \* \*

(c) *Deduction for amounts allocated from income not derived from patronage*—

\* \* \* \* \* \*

(2) *Definition.* As used in this paragraph, the term "income derived from sources other than patronage" means incidental income derived from sources *not directly related* to the marketing, purchasing, or service activities of the cooperative association. For example, income derived from the lease of premises, from investment in securities, or from the sale or exchange of capital assets, constitutes income derived from sources other than patronage. [Emphasis supplied.]

\* \* \* \* \* \*

Without more, a fair reading of the regulation would suggest that interest earned on a certificate of deposit purchased from a nonpatron would (as in the case of any return from an investment in securities) not be patronage sourced income. But plaintiff cites a decision of the predecessor to this court, *St. Louis Bank for Cooperatives v.*

facilitated by the interest income from certificates of deposit, is not shown nor otherwise emphasized in its brief.

*United States,*[6] for the proposition that interest earned from the prudent management of a cooperative's cash surplus is patronage sourced if used to facilitate the recognized functions and services provided by the cooperative to its members. The opinion appears to add a "use" test to the "source" test customarily applied.

There is, in fact, language in the *St. Louis Bank* opinion to the effect that "(a) particular item of income is patronage sourced when the transactions involved are '*directly related* to the marketing, purchasing, or *service* activities of the cooperative association.' "[7] (Emphasis supplied.) Plaintiff argues that here the interest income was "directly related" to a service activity of the cooperative in that it reduced the cost of borrowing by the cooperative to carry on its various service activities, including loans to members.[8] It further suggests that the facts in *St. Louis Bank* are precisely in point, and that the plaintiff bank prevailed on the very issue of whether passive income received by a cooperative as interest for the use of its surplus funds by a nonpatron, was patronage sourced.

But the facts in *St. Louis Bank* are not precisely in point. The plaintiff in that case was also a nonexempt cooperative corporation. It is important to note, however, that it was a cooperative bank serving other cooperative organizations. When the bank found itself in a temporary surplus condition, it relieved that surplus by making demand deposits in farm credit banks or loans to brokerage houses. The court held that income from both the farm credit banks and brokerage houses was patronage sourced even though neither were member-patrons of the plaintiff cooperative bank.

Plaintiff relies on *St. Louis Bank* as a case applying the "use" test in determining whether earnings are to be regarded as patronage sourced. Use of the income in that case facilitated the legitimate activities of a cooperative association. Defendant seeks to distinguish *St. Louis Bank* by suggesting that the taxpayer's real purpose in that case was not to earn income on temporary surpluses, but to cooperate with other banks so that the latter would reciprocate when the taxpayer reverted to a deficit position. That rationale would not apply, however, with respect to the loans made to brokerage houses and the court found interest income from both the farm credit banks and brokerage houses to be patronage sourced. To this argument defendant rather weakly responds that the loans to brokerage houses were made only after the needs of other banks had been satisfied.

There are, however, stronger grounds for distinguishing *St. Louis Bank* from this case. In that case money management was an integral function of the taxpayer, a banking service cooperative. It was engaging in its principal function, whether it was borrowing to correct a deficit position or lending to rid itself of a surplus. As the court stated:

> Defendant argues that plaintiff's treatment of surplus funds functionally is a separate activity from its borrowing to correct a deficit position. Borrowing of funds to correct a deficit position is admitted to be directly related to plaintiff's banking service for its member cooperatives; lending surplus funds to other farm credit system banks and to the brokerage houses, however, is seen as a separate operation only incidental to plaintiff's authorized banking service to its

---

**6.** 224 Ct.Cl. 289, 624 F.2d 1041 (1980).

**7.** 624 F.2d at 1045. The opinion cites Treas. Reg. § 1.1382–3(c)(2), quoted earlier in the text, and notes that the "IRS description of nonpatronage sourced income is a longstanding interpretation and the statutory provisions to which the regulations pertain twice have been reenacted by Congress without material change. The Treasury regulation in these circumstances is deemed to have Congressional

approval. A court may accord great weight to a longstanding interpretation placed on a statute by the agency charged with its administration." (Footnotes omitted.)

**8.** Defendant's counsel has noted that plaintiff's submissions are devoid of affidavits showing that interest income was in fact a material source of loans to patrons.

patrons. \* \* \* The loans of surplus funds were not business transactions "for" patrons, according to defendant, because they were incidental attempts to make profits that did not directly facilitate plaintiff's banking services. \* \* \*

Defendant's analysis is too narrow. Plaintiff's loans of surplus funds cannot be viewed in isolation from plaintiff's overall business functions. \* \* \* Management of both surplus funds and funds to cover a deficit position was an *integral* part of plaintiff's activities as a *banking* service cooperative. \* \* \* [Emphasis supplied.][9]

In contrast, the taxpayer cooperative in this case is principally engaged in purchasing, warehousing and distribution functions on behalf of its member-patrons. Unlike *St. Louis Bank,* its main function is not to provide a banking service. There is little if any evidence that money management constituted even a small part of the basic services which it rendered.

Plaintiff also relies upon a 1969 Revenue Ruling[10] involving a taxpayer cooperative which borrowed money from a bank for cooperatives to finance acquisition of agricultural supplies for resale to its members. The lending bank (not a member of the taxpayer cooperative) paid interest dividends to the taxpayer, which were held to be patronage sourced. The following is quoted by plaintiff's counsel from that Revenue Ruling:

> The classification of an item of income as from either patronage or nonpatronage sources is dependent on the relationship of the activity generating the income to the marketing, purchasing, or service activities of the cooperative. If the income is produced by a transaction which actually facilitates the accomplishment of

the cooperative's marketing, purchasing, or service activities, the income is from patronage sources.

Standing alone, this general language quoted by counsel would appear to support plaintiff's theory that its lending service to member-patrons from borrowed funds was facilitated by interest income which diminished to that extent its need to borrow. But Revenue Ruling 69–576 goes on to state:

> However, if the transaction producing the income does not actually facilitate the accomplishment of these activities *but merely enhances the overall profitability* of the cooperative, being merely incidental to the association's cooperative operation, the income is from nonpatronage sources. [Emphasis supplied.]

Revenue Ruling 69–576 also dealt with different facts. The income in question was a rebate on borrowings to accomplish one of the taxpayer's principal functions, namely, acquisition of agricultural supplies for resale to its members. In our case the income results incidentally from investment of periodic surpluses.

Also relied upon are *Land O'Lakes, Inc. v. United States,*[11] and Revenue Ruling 74–160.[12] In *Land O'Lakes,* the taxpayer cooperative periodically borrowed from a bank for cooperatives to facilitate its regular functions. To qualify for these loans, the taxpayer was required to purchase shares of the lending bank's common stock, and the stock dividends were distributed to the taxpayer's member-patrons as a deductible patronage dividend. The court found for the taxpayer because it perceived no significant distinction between the facts in *Land O'Lakes* and those present in Revenue Ruling 69–576, above described, nor the facts

---

**9.** 624 F.2d at 1049. The court went on to say that taxpayer's "money management activities (were) more than the mere investment of extra funds generated in functionally unrelated business activities. Plaintiff is a *service* cooperative, not a *marketing or purchasing* cooperative, and its function is to serve as a *financial intermediary* that transfers capital from buyers of consolidated bonds to its member patrons in

the form of credit." (Emphasis supplied.) 624 F.2d at 1052.

**10.** Rev.Rul. 69–576, 1969–2 C.B. 166, also cited in *St. Louis Bank.*

**11.** 675 F.2d 988 (8th Cir.1982).

**12.** 1974–1 C.B. 246.

present in Revenue Ruling 74–160.[13] The latter involved tax treatment of interest earned by a cooperative on loans máde to its chief supplier to permit the latter to finance equipment needed in the cooperative's business. As stated in the Ruling, the income producing loans to its supplier "actually facilitated the accomplishment of taxpayer's cooperative activities, in that it enabled the taxpayer to obtain necessary supplies for its operations."[14]

A common thread runs through each of the cases and rulings above summarized. Although the income at issue is generated by transactions between nonexempt cooperatives and nonpatrons, it is deemed to be patronage sourced because those transactions facilitate the basic functions of the cooperative in some way *other* than simple money management or overall profitability. In this case, that common thread does not appear. Plaintiff's principal argument is that interest earned from the purchase of certificates of deposit reduced to that extent its need to borrow. That argument, however, could be made with respect to any earnings from· whatever source. It begs the question of whether such profits are to be regarded as patronage sourced and as tax exempt when distributed as patronage dividends.

The rationale for exempting patronage sourced income is that it is being returned to patrons as earnings from business done with or for those patrons. To qualify it must *directly* relate to the marketing, purchasing or service activities of the cooperative and not, as here, be merely incidental to those activities. In attempting to demonstrate a *direct* relationship, plaintiff focuses upon the *use* to which its interest income was put, rather than upon the *transaction* or *activity* which produced that interest income. By the "use" test all income would be characterized as directly related since all nonexempt cooperatives could be expected to put all their income to good use.

Defendant readily acknowledges that if it had been necessary for plaintiff to purchase certificates of deposit as a prerequisite to obtaining loans to conduct its basic activities, the interest income distributed as a patronage dividend would have been deductible. But the parties have stipulated to the contrary. Unlike *St. Louis Bank,* purchase of the certificates by this taxpayer was not an integral part of a system by which it obtained necessary funds. Rather it was a prudent (but incidental) method of enhancing overall profitability, not unlike other investments it could have made.

### Conclusion

Based on all of the foregoing and on the facts presented in this case, it is concluded that plaintiff is not entitled to recover. Plaintiff's motion for summary judgment is denied; defendant's cross-motion for summary judgment is granted; and the petition shall be dismissed.